# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHIRLEY A. ROBERTS,

    Plaintiff,

    vs.                                                         No. CIV 01-1262 LH/WWD

DEBORAH HARTZ, Secretary of the New
Mexico Children, Youth, and Families
Department, MARCI KENNAI, head of the
Protective Services Division, JOHN and
JANE DOE, unknown foster/adoptive parents
of Ashley Rene Roberts, and THOMAS
KUKER, Special Agent in Charge,
Albuquerque Division of the F.B.I.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Deborah Hartz, Marci Kennai [collectively, "CYFD Defendants], and Defendants John and Jane Doe's Motion to Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief May be Granted (Docket No. 27); and Defendant Thomas Kuker's Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment, Mandamus and Injunctive Relief Pursuant to Fed. R. Civ. P. 12(b)(1) (Docket No. 35).[1] The Court, having considered the pleadings submitted by the parties, and otherwise being fully advised, finds that both motions to dismiss are well-taken and shall be

---

[1] Other pending motions include CYFD Defendant's Motion for Summary Judgment (Docket No. 62; Plaintiff's Emergency Motion to Compel F.B.I to Investigate and Prosecute Possible Offenses Against the United States (Docket No. 5); and Plaintiff's Emergency Motion for a Preliminary Injunction (Docket No. 16).

**granted,** and all other pending motions shall be **denied as moot.** Accordingly, this case shall be dismissed in its entirety, with respect to all defendants. A separate final judgment, dismissing this case without prejudice pursuant to Federal Rule of Civil Procedure 58, shall be filed concurrently with this Memorandum Opinion and Order.

## I.   PROCEDURAL HISTORY

Plaintiff filed a complaint in this Court seeking declaratory and injunctive relief from the judgments of New Mexico state district courts and the actions of employees of the New Mexico Children, Youth, and Families Department ("CYFD") and the adoptive parents ("the Does"), which she alleges improperly deprived her of parental rights in her granddaughter ("the Child"). Plaintiff also seeks a declaratory judgment that the New Mexico statutes designated as the "Children's Code" is facially unconstitutional. Finally, she moves the Court to enjoin the Federal Bureau of Investigation ("FBI") to investigate the whereabouts of the Child.

## II.  FACTUAL HISTORY

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court examines the sufficiency of the complaint and, in doing so, accepts all well-pleaded facts as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). The Court construes the pleadings of *pro se* litigants liberally; however, unsupported conclusory allegations in the complaint are insufficient to state a claim, and the Court will not accept those statements as true. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). The Court takes judicial notice of a number of orders from the New Mexico district courts that Plaintiff has submitted as exhibits to her Complaint, pursuant to Federal Rules of Evidence 201(b)(2) and (c).

The pertinent facts, as distilled from the complaint and attached exhibits, are as follows:

1.  Plaintiff, a citizen of the state of Hawaii, is the mother of Lisa R. Roberts and maternal grandmother of the Child. (Complaint, ¶¶7, 12, 13).

2.  On February 11, 1997, on Plaintiff's Verified Petition for Guardianship, the New Mexico District Court appointed Plaintiff as guardian of the Child "until further Order of this Court." (Stipulated Order and Agreement, *Shirley A. Roberts v. Lisa R. Roberts* ("Guardianship Case"), DR-97-461, entered February 11, 1997).

3.  On October 8, 1998, on motion of Lisa Roberts and after an evaluation by Court Clinic staff, the New Mexico District Court ordered the parties to comply with the Court Clinic's "Advisory Consultation Report and Recommendations" ("Recommendations"), which found that Lisa Roberts should have sole legal custody and primary physical custody. The parties were ordered to comply with the Recommendations "temporarily pending a second opinion, which may be obtained at Petitioner--maternal grandmother's expense." (Complaint, ¶13; Minute Order, Guardianship Case, entered October 8, 1998).

4.  Without having obtained the second opinion, Plaintiff requested a trial to reevaluate the Recommendations the New Mexico district court had relied upon in granting legal and physical custody to Lisa Roberts. (Memorandum Order, Guardianship Case, entered October 1, 1999).

5.  Describing the controversy between Plaintiff and her daughter as a "grandparent visitation dispute," the New Mexico district court judge denied Plaintiff a trial unless Plaintiff obtained the second opinion, as previously instructed. *Id.*

6. On July 11, 2001, the New Mexico district court determined that "no further hearing is necessary," and dismissed the Guardianship Case without prejudice, stating "All orders, decrees and judgments previously entered shall continue in full force and effect." (Disposition Order for Lack of Prosecution, Guardianship Case, entered July 11, 2001).[2]

7. Plaintiff did not know the Guardianship Case had been dismissed until October 25, 2001. (Complaint, ¶39).

8. Sometime in 1999, CYFD obtained legal and physical custody of the Child from Lisa Roberts by order of the Children's Court Division of the New Mexico District Court, in closed proceedings to which Plaintiff was not a party. *Id.*, ¶17.

9. CYFD placed the Child in foster care. *Id.*, ¶18.

10. Also in 1999, CYFD initiated proceedings to terminate Lisa Roberts' parental rights based on neglect. (Judgment Terminating Parental Rights and Stipulated Judicial Review Order, *State of New Mexico ex rel. Children, Youth and Families Department, In the Matter of Ashley Roberts, Child, and Concerning Lisa Roberts and Joseph Yung, a/k/a Joseph Wan On Yung, Jr.* ("Termination Case"), JQ 99-134, entered March 21, 2001).

11. CYFD did not file a petition against Plaintiff in the Termination Case. (Complaint, ¶20).

---

[2] Although the Disposition Order is captioned *Ashley Rene Roberts, et al. v. Lisa R. Roberts, et al.*, the case number, D-202-DM-9700461, is identical to that of the Guardianship Case.

12. On March 15, 2000, Plaintiff moved to intervene in the Termination Case. (Complaint, ¶21; Entry of Appearance and Motion to Intervene, Termination Case, both filed March 15, 2000).

13. The Children's Court took Plaintiff's motion to intervene under advisement and ordered Plaintiff to "cooperate with the home study process," contact a psychologist, and establish a residence in Hawaii by June 25, 2000, or contact CYFD by May 25, 2000 if she elected to stay in New Mexico. The Children's Court advised Plaintiff that if she did not establish a residence and contact a psychologist, her motion to intervene would be denied. (Interim Order on Motion to Intervene, Termination Case, entered June 16, 2000).

14. On March 21, 2001, the Children's Court terminated Lisa Roberts' parental rights, denied Plaintiff's motion to intervene, ordered CYFD to retain legal custody of the Child, and authorized CYFD to determine placement of the Child for her safety and welfare. (Judgment Terminating Parental Rights and Stipulated Judicial Review Order, Termination Case, entered March 21, 2001).

15. Defendants John and Jane Doe have been in the process of adopting or have adopted the Child in closed proceedings to which Plaintiff was not a party and for which she had no notice. (Complaint, ¶¶29, 42).

16. Plaintiff has contacted the Federal Bureau of Investigation in Hawaii and New Mexico to complain that the CYFD Defendants and the Does are violating federal crimes in holding the Child. Plaintiff accuses Defendants of violating: 18 U.S.C. §242 (civil

rights), 18 U.S.C. §1201 (kidnapping), 18 U.S.C. §1952 (racketeering), and 18 U.S.C. §1962 (RICO). *Id.*, ¶37.

17. CYFD has refused to allow Plaintiff to see the Child's records or tell her the whereabouts of the Child. *Id.*, ¶30.

Plaintiff seeks the following declaratory, injunctive, and mandamus relief, as well as attorney fees and costs:

A. <u>Declaratory Judgments</u>

• That the October 8, 1998 order in the Guardianship Case awarding sole legal custody to Lisa Roberts is void on due process grounds. (Complaint, ¶A).

• That Plaintiff is the legal guardian of the Child. *Id.*, ¶B.

• That the retention of the Child by the CYFD Defendants and the Does violates Plaintiff's civil rights. *Id.*, ¶C.

• That Plaintiff is entitled to "immediate legal and physical custody." *Id.*, ¶D.

• That any adoption of the Child originating from the Children's Court proceeding against Lisa Roberts is void. *Id.*, ¶E.

• That Chapter 32A of the New Mexico Statutes and Rule 10-108 N.M.R.A. are facially unconstitutional "to the extent they allow the State to refuse to surrender to one party to a domestic relations custody dispute a child seized from the other party for abuse and neglect without filing a petition against the noncustodial party." *Id.*, ¶F.

B. <u>Injunctive Relief</u>

• To compel the CYFD Defendants to disclose the identities of the Does. *Id.*, ¶G.

• To compel the CYFD Defendants to disclose the whereabouts of the Child. *Id.*, ¶H.

• To compel the CYFD Defendants and the Does to surrender total custody of the Child to Plaintiff. *Id.*, ¶I.

- To prohibit the CYFD Defendants and their subordinates, as well as the Does, from interfering with Plaintiff's exercise of guardianship of the Child under the authority of any proceeding against Lisa Roberts or on the basis of any circumstances arising from CYFD's seizure of the Child. *Id.*, ¶J.

C. Mandamus

- To compel the Federal Bureau of Investigation to "investigate and take positive action to halt the ongoing unlawful detention of [the Child] by [the CYFD] Defendants...and by John and Jane Doe..." *Id.*, ¶K.

D. Attorneys Fees and Costs

- To award Plaintiff's attorney fees and costs against Defendants. *Id.*, ¶L.

### III. DISCUSSION

Plaintiff brings most of her claims under 42 U.S.C. §1983,[3] alleging that Defendants violated her substantive and procedural due process rights under the First, Ninth, and Fourteenth Amendments to the United States Constitution in the proceedings in New Mexico state court. She asserts a fundamental right or liberty interest in the "custody, care, maintenance, and companionship" of the Child.

In their motion to dismiss, the CYFD Defendants, on behalf of themselves and the Does, argue that Plaintiff lacks standing to bring these claims because, as a grandparent, she does not possess a right secured by the Constitution or federal law and because New Mexico state law did not confer parental rights upon her as a result of the guardianship, if any, of the Child. The CYFD defendants also urge that Plaintiff's complaint is barred by the *Rooker-Feldman* doctrine, which defeats a federal court's subject matter jurisdiction in cases where a plaintiff's claim essentially seeks

---

[3]Plaintiff also brings this action under 42 U.S.C. §§1981 (entitlement to equal rights under the law) and 1988 (applicability of statutory and common law; attorney's fees under §§1981 and 1983); and 28 U.S.C. §§2201 (declaratory judgment), 2202 (further relief based on declaratory judgment), and 533 (investigative and other officials). The applicable analysis for this cause of action is a §1983 analysis.

a review of state court decisions. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*; District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).[4] In its motion to dismiss, the United States, on behalf of the FBI and Agent Kuker, argue that this Court has no subject matter jurisdiction based on its sovereign immunity.

This Court agrees that Plaintiff's entire case should be dismissed. This Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine and based on the sovereign immunity of the United States, and because Plaintiff lacks standing to bring her claims.

### A.     *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine precludes federal district courts from reviewing a challenge to a state court's judgment or a challenge that is "inextricably intertwined" with such a judgment. *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1107-08 (10th Cir. 2000). The basis for the doctrine lies in federal jurisdictional statutes that provide for appellate review of state court decisions in the United States Supreme Court only. *Id.* (citing 28 U.S.C. §1257). A claim is "inextricably intertwined"

> if the federal claim succeeds only to the extent that the state wrongly decided the issues before it. In other words, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.

*Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (citations omitted).

Most jurisdictions, including the Tenth Circuit, have qualified that *Rooker-Feldman* is inapplicable in cases where the plaintiff against whom the doctrine is invoked was never a party to

---

[4]In her Response to CYFD's Motion to Dismiss Complaint and accompanying Memorandum (Docket Nos. 32 and 33), Plaintiff asks this Court to take disciplinary action against Chief Magistrate Judge Deaton and defense attorneys Garrity and Kling. The Court denies these requests, has disregarded them in its analysis, and reprimands Plaintiff, noting that her comments border on sanctionable conduct under Federal Rule of Civil Procedure 11(c).

the action challenged. *Johnson,* 226 F.3d at 1108 (collecting cases). In *Johnson v. Rodrigues (Orozco)*, a purported father, whose child had been adopted by another couple without the father's knowledge, sued the child's mother and the adoption center in federal district court. Mr. Johnson sought an invalidation of the adoption and alleged that the statutes under which the child was adopted deprived him of his fundamental right to maintain a parent-child relationship. The district court dismissed the entire case under *Rooker-Feldman* on the grounds that it essentially sought appellate review of the state court decisions. The Tenth Circuit reversed the district court, holding that *Rooker-Feldman* did not apply for two reasons. First, plaintiff's "discrete general challenge" to the constitutionality of the state adoption laws was a separate claim, not inextricably intertwined with the decisions of the state court. Second, *Rooker-Feldman* did not apply to the claims seeking to reverse the state court decisions because the plaintiff had not been a party to those proceedings. *Id.* at 1107-10.

The bulk of Plaintiff's claims for relief in this case request this Court either to review the decisions of the state court or order some action in contravention of the state court's rulings (¶¶A, B, D, & E), or to make rulings on matters that are inextricably intertwined with those state court decisions (¶C, G, H, I, & J). Plaintiff argues that *Johnson* precludes *Rooker-Feldman* dismissal because she was not a party to the Termination Case, but *Johnson* is easily distinguished on this point. In *Johnson*, the plaintiff did not know there was a child that he might have fathered, much less that the child was being adopted, until the proceedings had progressed significantly. Mr. Johnson not a party to the state court proceedings.

In contrast, Plaintiff had substantial involvement in both state court proceedings. In the Guardianship Case, she initiated the petition for guardianship and was, therefore, a named party. In

the Termination Case, Plaintiff became aware of and attempted to intervene in the proceedings. The state court included her in at least one hearing and advised her of what action she needed to take in order for her intervention to be considered.

Moreover, Plaintiff had post-judgment options. Upon learning of the dismissal of the Guardianship Case, Plaintiff could have moved to reinstate the case, asked for a clarification, or appealed the dismissal to the New Mexico Court of Appeals. Although she was ultimately denied intervention in the Termination Case, Plaintiff could have appealed that denial.[5] *Apodaca v. Town of Tome Land Grant*, 86 N.M. 132, 520 P.2d 552 (1974) (denial of a motion to intervene is an appealable order).

Because Plaintiff was not a non-party to the state court proceedings in the sense the *Johnson* court found significant, it is appropriate to dismiss all claims for relief that challenge the decisions of the state courts or are inextricably intertwined with those decisions under the *Rooker-Feldman* doctrine. The Court finds that Paragraphs A through E and G through J fit this bill. One of the remaining substantive claims (¶F), however, is a "discrete general challenge" to the constitutionality of state laws, and it is not dismissed under the *Rooker-Feldman* doctrine. *Johnson*, 226 F.3d at 1108-09.

### B.     *Standing to Challenge State Law*

Plaintiff alleges that Chapter 32A and Rule 10-108 N.M.R.A (2002) are unconstitutional "to the extent they allow the State to refuse to surrender to one party to a domestic relations custody

---

[5]If Plaintiff were indeed granted a permanent guardianship that was never terminated in the Guardianship Case, she may have been able to appeal the denial of her motion to intervene in the Termination Case as improper under Rule 10-108(D) N.M.R.A. (2002). Rule 10-108(D) mandates that a legal guardian is a proper party to termination of parental rights proceedings. However, an appeal on this basis, as opposed to a challenge to the *constitutionality* of that rule, may only be brought in the New Mexico Court of Appeals.

dispute a child seized from the other party for abuse and neglect without filing a petition against the noncustodial party" or, essentially, because they fail to force CYFD and the courts to offer a non-custodial party, such as Plaintiff, the first opportunity to take custody of and adopt a child after the termination of parental rights.

To establish standing to sue, Plaintiff must meet the case and controversy requirements of Article III of the United States Constitution. SCHWARTZ & KIRKLIN, SECTION 1983 LITIGATION, §2.5 (3d ed. 1995). To do this, she must show that she has suffered an injury in fact, which may be "bodily harm, damage to one's reputation, environmental damage, aesthetic injury, or the denial of a constitutionally protected right." *Id.*[6] Plaintiff alleges that her injury in fact was the denial of her substantive and procedural due process rights protected by the Fourteenth Amendment. While establishing standing to mount a facial challenge to the constitutionality of a statute is less burdensome than for other claims, Plaintiff must still satisfy this injury in fact requirement. *PeTA v. Rasmussen*, 2002 WL 1803847, *3 (10th Cir. 2002) (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)).

In evaluating standing, the Court examines the factual allegations of the pleadings and any supporting exhibits and affidavits. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Plaintiff's complaint alleges that Defendants denied her of substantive *parental* rights, as well as other liberty interests without due process, both in her capacity as the Child's grandmother and as the Child's putative

---

[6]Standing also requires that there be a "causal relationship between the injury and the challenged conduct...[that] has not resulted from the independent action of some third party not before the court." *Northern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 663 (1993), and there must be a "likelihood that the injury will be redressed by a favorable decision." *Id.*

guardian. Therefore, the Court must assess whether Plaintiff possesses a constitutionally protected parental right or liberty interest while wearing either of these hats.

### 1. Grandparents' Rights

Unlike other cases examining a grandparent's right to *visitation* with a grandchild under a state statute, *e.g., Troxel v. Granville*, 530 U.S. 57 (2000), Plaintiff claims to possess rights that are truly parental in nature. However, Courts have held that grandparents do not possess a fundamental, parental-type right or liberty interest in the care, custody, and control or full adoption of a grandchild. *E.g., Mullins v. State of Oregon*, 57 F.3d 789, 797 (9th Cir. 1995) ("[G]randparents *qua* grandparents have no constitutionally protected liberty interest in the adoption of their children's offspring."); *Gordon v. Lowell*, 95 F.Supp.2d 264, 269 (E.D. Penn. 2000) (holding that grandparents had no property or liberty interest in care, custody or control of grandchild to support claim that adoption procedures violated their Fourteenth Amendment rights). Nor has this Court found any case law to suggest that fundamental parental rights, as acknowledged by the Supreme Court in cases like *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) and *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), automatically transfer to another relative upon the termination of the biological parents' rights, as they do in an adoption.

In some states, including New Mexico, grandparents may have a liberty interest in *visitation* with their grandchildren by virtue of a statute, even after the parental rights of the natural parents have been terminated. *Lucero v. Hart*, 120 N.M. 794, 907 P.2d 198 (N.M. Ct. App. 1995) (interpreting 1993 changes to the Grandparent's Visitation Privileges Act, N.M. STAT. ANN. §40-9-2). However, such interests in visitation do not rise to the level of constitutionally protected parental

rights to the permanent and full physical and legal custody of a child, and there is nothing in the record to indicate that Plaintiff has sought visitation privileges under this statute.

Furthermore, these grandparent visitation rights do not expressly or impliedly create a procedural right to be considered as a placement option when parental rights have been terminated. The Supreme Court has held that, in order to create a liberty interest, state statutes or regulations are required to contain "'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow..." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989); *Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983). For New Mexico adoptions, Courts may consider placement with a relative, but this is discretionary, based on the "best interests of the child" standard. *See, e.g.*, N.M. STAT. ANN. §§32A-5-12 and -36(F)(7) (Michie 1999). In short, the New Mexico adoption statutes do not create a liberty interest for grandparents in the care, custody, and control of a grandchild. Because Plaintiff lacks a legally-protected right as a grandparent, the Court finds that she lacks standing in that capacity to bring her constitutional claims.

### 2. *Rights Deriving From Guardianship*

Plaintiff also alleges that she has a permanent guardianship over the Child by virtue of the state court's Stipulated Order and Agreement, entered February 11, 1997. The same court's October 8, 1998 Minute Order directed the parties to comply with Court Clinic Recommendations placing primary physical custody and sole legal custody in Lisa Roberts. The Court finds that the record is inconclusive about what type of guardianship relationship was created by the February, 1997 order

and as to whether that guardianship was terminated by the October, 1998 order.[7]  Therefore, for the purposes of this motion to dismiss only, the Court presumes that Plaintiff was appointed as the Child's permanent guardian and that the guardianship was never properly terminated.

In New Mexico, however, a permanent guardianship does not create a relationship equal in all respects to parenthood, as an adoption does, nor does it confer the fundamental rights of parenthood upon the guardian. *E.g., Mullins*, 57 F.3d at 794 ("[T]he asserted interest is one in a potential, still undeveloped familial relationship with adopted children...and whatever claim a prospective parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest."). Neither does New Mexico law expressly create a liberty interest in the care, custody, and control of a child on behalf of the guardian. *Cf. Greene v. French*, 97 N.M. 493, 494-95, 641 P.2d 524, 525-26(N.M. Ct. App. 1982) (quasi-guardianship order under New Mexico Probate Code that made no legal determination that the biological parent's right to custody was terminated or suspended, does not control the issue of custody of the children; order affected only the responsibility for the support, maintenance, and medical care of the children).

---

[7]For instance, N.M. STAT. ANN. §§32A-4-31(C) (Michie 1999) states, "The court may establish a permanent guardianship between a child and the guardian when the prospective guardianship is in the child's best interest and when:
    (1) the child has been adjudicated as an abused or neglected child;
    (2) the department has made reasonable efforts to reunite the parent and child and further efforts by the department would be unproductive;
    (3) reunification of the parent and the child is not in the child's best interests because the parent continues to be unwilling or unable to properly care for the child; and
    (4) the likelihood of the child being adopted is remote or it is established that termination of parental rights is not in the child's best interest.

Nowhere in the record presented to this Court did the state court make all of these necessary findings, which must be proven by clear and convincing evidence under N.M. STAT. ANN. §§32A-4-32(F) (Michie 1999). In fact, twenty months after the guardianship order, the state court ordered the Child back into Lisa Roberts' physical and legal custody, belying, for example, any possible inference that the state court had found that reunification of the parent and child would be unproductive or not in the child's best interests.

The New Mexico Statutes illustrate that a permanent guardianship does not create parental rights in the guardian. For example, §32A-4-32(G) (Michie 1999) (Permanent guardianship; procedure) states, in part:

> A judgment of the court vesting permanent guardianship with an individual divests the biological or adoptive parent of legal custody or guardianship of the child, but is *not* a termination of the parent's rights.

(emphasis supplied). In contrast, §32A-5-2(A) (Michie 1999) states:

> The purpose of the Adoption Act [this article] is to establish procedures to effect a legal relationship between a parent and adopted child that is *identical* to that of a parent and biological child.

(some punctuation omitted, emphasis supplied). It is clear from this example that New Mexico statutes do not equate a permanent guardianship with parenthood, and the very critical manner in which they differ is in the conferral (or lack thereof) of fundamental parental rights.[8]

Plaintiff fails to establish that she was deprived of a right that is legally-protected. Absent a constitutional right or liberty interest protected by the Due Process Clause, Plaintiff cannot meet the

---

[8]Plaintiff's citation to *In the Matter of Mary L.*, 108 N.M. 702, 778 P.2d 449 (N.M. Ct. App. 1989), is inapposite. Plaintiff alleges that, even if the termination of her guardianship were held to be valid, her parental rights to the Child were not divested for purposes of the Termination Case. (Complaint, ¶62). In *Mary L.*, the court held that where a custodial parent's rights have been terminated and CYFD has taken custody of the child, the non-custodial parent is not merely a placement alternative. Rather, the non-custodial parent is entitled to immediate custody unless the state Human Services Department can establish that the non-custodial parent is unfit. *Mary L.*, 108 N.M. at 705, 778 P.2d at 452.

The *Mary L.* opinion created the presumption of custody in the non-custodial parent after the termination of parental rights of the custodial parent, absent a showing of unfitness. Plaintiff is not a non-custodial parent, however, and in no cases decided since *Mary L.* have the New Mexico courts applied this reasoning to extend such a presumption to guardians. Therefore, New Mexico case law does not create a presumption of parental rights in persons who are not actual parents.

first prong of Article III standing. This Court, accordingly, lacks subject matter jurisdiction, and Paragraph F shall be dismissed without the Court reaching the merits of this claim.[9]

### C. *Mandamus Claims Against Agent Kuker and the FBI*

Plaintiff's only claim against Agent Kuker and the FBI is contained in Paragraphs 66 through 69 of her complaint, and she requests relief in the form of mandamus in Paragraph K. Plaintiff invokes 28 U.S.C. §533 to request the Court to compel the Federal Bureau of Investigation to "investigate and take positive action to halt the ongoing unlawful detention of [the Child] by [the CYFD] Defendants...and by John and Jane Doe...." Plaintiff claims this detention violates a number of federal criminal statutes. Agent Kuker and the United States ("Government Defendants") argue that, regardless of the FBI's affirmative duty to investigate the violation of federal criminal statutes, this Court lacks subject matter jurisdiction to adjudicate a claim that the FBI failed in this duty. The Government Defendants urge that, by suing Agent Kuker in his official capacity, Plaintiff is essentially suing the United States, which has sovereign immunity to suit unless it has consented to be sued. *United States v. Sherwood*, 312 U.S. 584, 590-91 (1941). They additionally assert that Section 533 does not contain the required unequivocal waiver of sovereign immunity.

"Mandamus is an extraordinary remedy that should be utilized in only the clearest and most compelling of cases....For mandamus to issue, there must be a clear right to the relief sought, a plainly defined and peremptory duty on the part of the defendant to do the action in question, and no other adequate remedy available." *Andrean v. Sec'y of United States Army*, 840 F.Supp. 1414, 1423-24 (D.Kan. 1993). However, "if the government has not consented to suit, the courts have no

---

[9] Because the Court finds that Plaintiff did not possess a legally-protected right, whether she meets the second and third prongs of standing, or the prudential or statutory concerns that may come into play once Article III standing has been established, will not be addressed.

jurisdiction to either 'restrain the government from acting, or to compel it to act.'" *United States v. Murdock Machine & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996) (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949)). Section 533 does not contain language that could be construed as an unequivocal waiver of sovereign immunity for a private citizen's legal action against Agent Kuker for electing not to investigate a certain matter. Absent such a waiver, the Court lacks subject matter jurisdiction to adjudicate a suit against the United States, and the claims against Agent Kuker and the United States shall be dismissed.

## IV. CONCLUSION

The majority of Plaintiff's requests for relief improperly invoke this Court to review decisions of the New Mexico district court or to adjudicate claims that are inextricably intertwined with those state court decisions. The Court lacks subject matter jurisdiction to entertain these claims under the *Rooker-Feldman* doctrine, as detailed above. Plaintiff's facial attack on the constitutionality of the New Mexico laws, though not precluded by *Rooker-Feldman*, nevertheless fails for lack of standing since Plaintiff does not possess the legally recognized rights that she claims the statutes and rule work to deprive. Finally, Plaintiff's claim against Agent Kuker and the United States must be dismissed for lack of subject matter jurisdiction based on the sovereign immunity of the United States.

**IT IS, THEREFORE, ORDERED** that the CYFD Defendants' and the Does' Motion to Dismiss, as well as Defendant Kuker's Motion to Dismiss are granted. Plaintiff's Complaint is dismissed in its entirety, with respect to all Defendants, for the reasons discussed in this Memorandum.

**IT IS FURTHER ORDERED** that all other pending motions are dismissed as moot.

**IT IS FURTHER ORDERED** that Plaintiff's requested actions against Chief Magistrate Judge Deaton and Attorneys Garrity and Kling are denied.

**IT IS FURTHER ORDERED** that the parties shall bear their own attorney fees and costs. A separate final judgment, dismissing this case without prejudice pursuant to Federal Rule of Civil Procedure 58, shall be filed concurrently with this Memorandum Opinion and Order.

_____
**UNITED STATES DISTRICT JUDGE**